DECISION
Plaintiff appeals Defendant's December 13, 2007, Notice of Refund Denial for tax year 2006. At trial, Plaintiff appeared on his own behalf. Testifying for Plaintiff was Veronica Ramos (Ramos), Plaintiff's girlfriend. Defendant was represented by Maribel Luna (Luna).
 I. STATEMENT OF FACTS
Plaintiff and Ramos live together and share household expenses. They are not married. The couple has three children, one born July 30, 1998, and two born July 18, 2003.
Both Plaintiff and Ramos worked full-time outside the home in 2006. Both worked Monday through Friday, Plaintiff from 7:00 or 8:00 a.m. until 5:00 p.m., and Ramos from 6:00 a.m. until approximately 2:30 p.m. Their children were in child care while they worked. The total reported child care cost was $6,180. Payment was allegedly made in cash. Plaintiff has no receipts or bank records verifying the payments. Plaintiff did submit letters from the five providers attesting to the care of the children and the amount paid.
Because he is not married, Plaintiff filed a separate 2006 tax return. Plaintiff claimed head of household filing status, and claimed the child care credit and the working family credit, based on the reported child care costs of $6,180. Defendant reduced Plaintiff's child care credit *Page 2 
and denied entirely the working family credit, reducing Plaintiff's refund from $2,743 to $271. Plaintiff timely appealed Defendant's Notice of Refund Denial.
 II. ANALYSIS
ORS 315.262(2)[1] provides a refundable credit for certain low-income taxpayers to partially offset the taxpayer's qualifying child care expenses incurred to enable the taxpayer to work or go to school. The credit is based on a percentage of the taxpayer's qualifying child care expenses and is known as the "working family child care credit," or WFC. In addition to the WFC, ORS 316.078 provides for a nonrefundable credit for certain employment-related expenses, including child care, paid by a taxpayer for the care of a dependent child or children. That credit is commonly referred by the short title "child care credit." Plaintiff claimed both credits on his 2006 return.
The question in this case is whether Plaintiff actually paid for child care and, if so, how much he paid. Plaintiff contends that he paid $6,180 and is entitled to the credits as reported on his return. Defendant insists the credits should be denied because Plaintiff does not have adequate substantiation of the claimed expenses.
Plaintiff has the burden of proof and must establish his case by a "preponderance" of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. of Revenue, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." Reed v. Dept. of Rev., 310 Or 260,265, 798 P2d 235 (1990).
According to the testimony, Plaintiff typically took the children to the child care provider in the morning on his way to work, and Ramos picked them up in the afternoon when she was off work. There were reportedly five different providers caring for the children in 2006. Both *Page 3 
Plaintiff and Ramos testified that Ramos actually paid the providers each week on Friday when she picked up the children, but used money in the couple's joint bank account. Ramos would go to the bank with her paycheck, deposit the check in the couple's joint account, and withdraw the money to pay for child care. Ramos testified on cross-examination that she paid in cash rather than by check because the providers preferred cash.
The court shares Defendant's concerns about the lack of substantiation. There are no canceled checks (because payment was made in cash), no bank records, no receipts, and no contemporaneous records tracking the amount of time the children were in child care each week (or month). Plaintiff does have provider statements, but they are rather general (e.g., four weeks in January, four weeks in February), and are not based on contemporaneous notes. Moreover, the providers did not testify, and there was, therefore, no way to verify the information in the written statements. Luna tried to contact each of the five reported providers to verify the information in their signed statements and, in each instance, was unable to speak with the alleged provider. In one instance, the number was no longer in service; in two instances, Luna left messages but did not receive a return call; in another instance, the phone was never answered; and in the final case, Luna was repeatedly told by the person answering the phone that the person she was calling was not available and that she should call again another time. Return calls were met with that same response.
Where independent substantiation is lacking, the sworn testimony of the child care provider is extremely important. See Bello v. Dept. ofRev., TC-MD No 060020B, WL 1460903 (May 8, 2007); Marks v. Dept. ofRev. (Marks), TC-MD No 070124E, WL 1452000 (May 11, 2007);Rodriguez-Avalos v. Dept. of Rev., TC-MD No 050651C, WL 2614534 (Oct 12, 2005). Also critical is the candor and credibility of all witnesses. *Page 4 
In this case, the providers did not testify, and there are problems with the witnesses' credibility. For example, Plaintiff was aware that substantiation was a key aspect of the case, but he did not provide the bank statements that would allegedly show the weekly deposits and withdrawals taken to pay for the childcare. And, although both Defendant and the court had advised Plaintiff prior to trial that bank records would be helpful to prove his case, when pressed on cross-examination, Plaintiff testified that he did not know the court would want those records. Ramos, at first, testified that there were four providers, but when questioned by Luna on cross-examination, she corrected her testimony to agree with an earlier written statement she had provided (submitted by Defendant as Exs B-8 through B-11), stating that there were five providers.
In Marks, the taxpayers were denied the credit for failure to meet the statutory burden of proof provided in ORS 305.427. The taxpayers paid cash for the alleged child care expenses and had no receipts or canceled checks. The taxpayers did have a letter from the alleged provider, but that provider did not testify at trial. The court ruled that a provider letter, by itself, was insufficient evidence to satisfy the statutory burden of proof. In such cases, stated the court, the provider should testify. Marks, WL 1452000 at *2.
The taxpayers in Cortez v. Dept. of Rev. (Cortez), TC-MD No 070754C, WL 413439 (Feb 14, 2008) had a written provider statement, but the provider did not testify, and she was related to the taxpayers. The court concluded that the testimony was not credible because of conflicts in the statements, and that the provider's written statement did not "make sense." Accordingly, the credit was disallowed. This case presents concerns similar to those in Marks and Cortez. *Page 5 
 III. CONCLUSION
After carefully evaluating the evidence, the court concludes that Plaintiff has failed to adequately substantiate his claim to the two disputed credits for 2006. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal must be denied.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on November 7,2008. The Court filed and entered this document on November 7,2008.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005. *Page 1